# 578-15

No.PD-0578-15

IN THE COURT OF CRIMINAL
APPEALS OF TEXAS

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 27 2015

Abel Acosta, Clerk

KENNETH CRAIG VICKERS # 1925934
petitioner

v.

THE STATE OF TEXAS
respondent

On Appeal From The Court of Appeals For The
Sixth Appellate Judicial District of Texas
at Texarkana C.O.A. no. 06-14-00072-CR

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

KENNETH CRAIG VICKERS # 1925934
Telford Unit
3899 State Hwy 98
New Boston,TX.75570

Oral Argument Requested if This Court deems Neccessary

FILED IN
COURT OF CRIMINAL APPEAL°

JUL 27 2015

Abel Acosta, Clerk

Court Copy

## IDENTITIES OF PARTIES

The parties are as follows:

Mr. Kenneth Craig Vickers, pro se petitioner

Telford Unit, 3899 State Hwy 98, New Boston, TX 75570


State of Texas, respondent

Mr. Will Ramsey, 8th Judicial District Attorney, PO Box 882, Sulphur Springs, TX 75483-0882 and

Mr. Peter Morgan, 8th Judicial District Attorney, PO Box 882, Sulphur Springs, TX 75483-0882

# TABLE OF CONTENTS

Identies of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . iii,1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . 1,2

Grounds For Review . . . . . . . . . . . . . . . . . . . . . . . . . below

1. The court of appeals erred by affirming the trial court's conviction when proof of ineffective assistance of counsel exists in the record. (R.R. vol.4 p.24, R.R. vol.4 p.74 )

2. The Petitioner's guilty plea was made involuntarily by failure to notify the Petitioner that he was pleading to a offense with a deadly weapon and coerced by trial counsel. (R.R. vol.3 p.15)

3. The Petitioner was denied a fair trial when trial judge sentenced him according to judge's personal knowledge of co-defendant rather than the evidence presented at trial. (R.R. vol.4 p.81)

Request for Oral Argument . . . . . . . . . . . . . . . . . . . . . . . i

Summary of The Argument . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4 - 7

Prayer For Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . 8

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . 7

# INDEX OF AUTHORITIES

ARIZONA V. FULMINATE, 499 U.S. 279, 309-10; 111 S.Ct. 1246; 113 L.Ed. 2d 302 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Blount V. STATE, 257 S.W. 3d 712 (Tex. Crim. App. 2008) . . . . . . . . . 5

BOYKIN V. ALABAMA, 395 U.S. 238, 244; 89 S.Ct. 1709, 1712; 23 L.Ed. 2d 274 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

DAVISON V. STATE, 405 S.W. 3d 682 at 686 (Tex. Crim. App. 2013) . . . . . 6

GENTRY V. STATE, No. 06-05-00237-CR, 2006 WL 932057 (Tex. App. 2006) . . . 6

HERRING V. ESTELLE, 491 F.2d 125 (5th Cir. 1987) . . . . . . . . . . . . . 4

HINES V. VILLALOBA, 231 S.W. 3d 550 (Tex. App. Dallas 2007).. ......... .5

LOPEZ V. SCULLY, 58 F.3d 38 (CA2 1995)................5

MENDEZ V. STATE, 138 S.W. 3d 334, 341 (Tex. Crim. App. 2004)...........6

RICKMAN V. BELL, 131 F.3d 1150 (CA6 1997)................5

U.S. ex rel. BARNARD V. LANE, 819 F.2d 798 (7th Cir. 1987)...........4

U.S. V. ALVARADO SALDIVAR, 62 F.3d 697 (5th Cir. 1995)............5

## STATEMENT OF THE CASE

The State charged petitioner by indictment with burglary of a habitation with intent to commit the felony offense of aggravated assault or aggravated kidnapping on June 17, 2013. (C.R. p.4). On Febuary 13, 2014, pursuant to ART. 26.13 T.C.C.P. admonishments, Petitioner entered a plea of guilty to "Burglary Habitation Intend Other Felony," and the State agreed to allow the court to decide punishment in exchange for art. 1.15 T.C.C.P. waivers. (C.R. p.14-19; T.C.C.P. Art. 26.13; T.C.C.P. Art. 1.15). On April 17, 2014, the court sentenced Petitioner to fifty (50) years. An affirmative finding of a deadly weapon was entered and Petitioner timely filed an appeal. On April 27, 2015, trial court's conviction was affirmed.

## STATEMENT OF THE FACTS

The Petitioner was charged by indictment alleging, on about April 20, 2013, that he did, "intentionally and knowingly enter a habitation without the effective consent of Jesse Ballentine, the owner thereof, and attempted to commit or committed the felony offense of Aggravated Asault and Aggravated Kidnapping." (C.R. p.4). There is no mention of a deadly weapon in the indictment. The written plea admonishments signed by Vickers, pleading guilty on Febuary 13, 2014, also make no mention of a deadly weapon (C.R. p.14-19 and R.R. vol.3 p.15) to which the court said "Mr. Vickers to the

1

first-degree offense of burglary of a habitation, what is your plea, sir?" (R.R. vol.3 p.15). Mr. Vickers, the Petitioner, was never notified that a finding of a deadly weapon was being sought.

The Petitioner acted with a co-defendant Royce "Jake" Sewell, who was also charged with "Burglary of a Habitation Intend Other Felony," and whom sentenced by the same judge Northcutt to twenty five (25) years in TDCJ prior to Mr. Vicker's plea. (R.R. vol.3 p.21 and R.R. vol.4 p.76). However, Mr. Sewell is eligible for parole this year, November 17, 2015, while Mr. Vickers is not eligible for parole for 25 years for the same offense because a deadly weapon was not affirmed nor sought.

Jake Sewell came to Mr. Vicker's home early in the morning of April 20th, 2013, saying he had been robbed. (R.R. vol.4 p.54). He induced Mr. Vickers to go with him to find "Cody," which was the person who had robbed him. Jake Sewell took the Petitioner to some apartments and Petitioner knocked on the door and entered when the door was opened to him. He said he was looking for "Cody " and "Jamie " (R.R. vol.4 p.23,25). Petitioner had several guns with him. Jesse Ballentine, Angelina Ballentine and their daughter were in the apartment and were lead outside by Mr. Vickers to identify them by Mr. Sewell who acknowledged that Jesse was not Cody or Jamie. They then all went back into the apartment,including Jake, when Cody returned to the apartment Mr. Sewell engaged him in a fight. Cody ran away and Mr. Vickers and Jamie ( who testified to police that he went willingly ), got into the Petitioner's truck which was driven by Jake to find him. Mr. Sewell was dropped off by a friend Mr. Vickers, after they had exited the truck, and Mr. Vickers and Jamie ( who was the son of Jesse and Angelina Ballentine) were arrested a short time later when they approached an officer impounding Petitioner's vehicle.

2

Prior to pronouncing sentence, Judge Northcutt stated " You know, I'm in an unusual situation here in that I know Jake Sewell,(his name is Royce but his friends call him Jake), and I've known him for a while. And as you know, I sentenced him to twenty-five years and that was difficult for me to do. Because while the thing to the defensive theory here has been meth and Jake Sewell, I am absolutely convinced that Jake Sewell has always been a folbwer. Jake Sewell couldn't lead himself to the bathroom. Jake Sewell,bless his heart, just ain't a real bright guy and you are..."(R.R. vol.4 p.76). Judge Northcutt then sentenced Petitioner to fifty years and found that a deadly weapon was used or exhibited.(R.R. vol.4 p.81)

## SUMMARY OF THE ARGUMENT

The petitioner was entitled to effective assistance of counsel secured by the Sixth Amendment of the United States Constitution. The record proves trial counsel deprived petitioner of effective representation by failing to investigate a lesser included offense( such as the co-defendant received ) , lying about subpoenaed witnesses, failing to properly impeach the State's witness, failing to inform the petitioner of the deadly weapon finding sought by the State, failure to advise against the plea ( guilty) and to be sentenced by the court. Trial counsel took advantage of petitioner's mental impairments to achieve the afore-mentioned acts.

Petitioner's guilty plea was not voluntary or understandingly made because the written and oral plea admonishments failed to apprise him that he was pleading guilty to a crime with a deadly weapon. Espeacially when his co-defendant was found guilty of the same offense without a deadly weapon finding. Fourteenth Amendment rights to Due Process require that a defendant understand the ramifications of a guilty plea and must understand the consequences. The trial judge based sentence on his personal

knowledge of the co-defendant over a long period of time instead of the evidence presented at trial, thereby depriving Petitioner of a fair trial.

ARGUMENT

1. The court of appeals erred by affirming the trial court's conviction when proof of ineffective assistance of counsel exists in the record. (R.R. vol.4 p.24 and R.R. vol.4 p.74)

The State's lead witness, Angelina Ballentine, testified under oath "He [petitioner] came in saying, you know, you should know better than to open your door and let a complete stranger come into your house."(R.R. vol.4 p. 24) and also stated under oath, "He was telling-yes,he was telling my daughter that and me that." (R.R. vol.4 p.24). (1) This clearly proves that the petitioner knocked on the door requesting entry and (2) that the door was opened to him with an expectation of the request for entry being granted (3) that expectation was validated by the testimony of Ms. Ballentine saying he was'let in' (R.R. vol.4 p.24). Therefore the Petitioner could not have committed Burglary of a Habitation as defined by Texas Penal Code 30.02 because he did not illegally enter the residence but instead had a door opened to him from a resident of said habitation after knocking to request entry. Furthurmore, Angelina Ballentine ( whom is an adult resident of said location), did not testify that she requested he leave until several moments after he had been let in and revealed a rifle.

At that point, the instruction to leave after being let in would instead construe criminal tresspass- not burglary. Trial counsel was in fact ineffective for failing to investigate a lesser included offense as in U.S. ex rel. Barnard v. Lane,819 F.2d 798 (7th Cir. 1987). In fact counsel did no investigation because he had coerced petitioner to plead guilty or had failed to advise him not to. see Herring v. Estelle,491 F.2d 125 (5th Cir. 1974) ( Where counsel failed to advise client of acts not constituting

4

the alleged offense. State's witness also testified that the event lasted " at least an hour or so."(R.R. vol.4 p.35) with them and neighbors going in and outside smoking cigarettes and the small child played with a friend.

Thus contradicting the kidnapping allegation as well. Mrs. Ballentine testified also " to make us feel better, I guess, he unloaded the gun." (R.R. vol.4 p.36). Furthurmore, it is proven on record that trial counsel did not adequately seek probation for his client when counsel stated " let me tell you what, if that had been me and my kids, I wouldn't be - it would be hard for me to say that."(R.R. vol.4 p.74) not asking for probation but claiming only that the petitioner wanted probation. Thus not only putting himself in the victim's shoes but failing to represent his own client and violating the Texas Rules of Professional Conduct rules 1.01-3.01. Trial counsel ( attacked his client's charachter and painted a bad picture of his own client) as in RICKMAN V. BELL,131 F.3d 1150 (CA 6 1997) and LOPEZ V. SCULLY,58 F.3d 38 (CA 2 1995). The issue of ineffective assistance of counsel and denial of representation is clearly supported by the record and cannot be considered as trial strategy. The burden to the petitioner to show " that it is actual error, that it is plain, and that it effects a substantial right. " as in U.S. V. ALVARADO SALDIVAR,62 F.3d 697 (5th Cir. 1995) has been satisfied competently. The right to counsel is guaranteed by the Sixth Amendment of the U.S. Constitution and is fundamental in a criminal proceeding " Fundamental error can be raised at any time." see HINES V. VILLALOBA,231 S.W. 3d 550 (Tex. App. Dallas 2007), thus this error is not procedurally barred and a reversal is warranted to secure justice.

> 2. The court's entry of a deadly weapon finding in the judgment was in error as plea admonishments, both written and oral, to petitioner's open plea of guilty failed to notify him that he was pleading to a offense with a deadly weapon, thus making his plea involuntary and his Fourteenth Amendment rights to due process.

An allegation of a crime with use or exhibition of a weapon must give adequate notice. see BLOUNT V. STATE,257 S.W. 3d 712 (Tex.Crim.App. 2008)

5

The trial Judge specifcaly asked the petitioner," Mr. Vickers to the first-degree felony offense of burglary of a habitation, what is your plea, sir?" (R.R. vol.3 p.15) there is no doubt that petitioner understood that he he was pleading guilty to only burlary of a habitation ( as his co-defendant had) without a deadly weapon finding being sought. An affirmative finding of a deadly weapon was decided in petitioner's offense, though his co-defendant did not have an affirmative finding when charged with the same offense and tried by the same judge. A guilty plea is not constitutionally valid unless the defendant understands both the charges against him and the consequences of his plea. as in BOYKIN V. ALABAMA, 395 U.S. 238, 244; 89 S.Ct. 1709, 1712 ; 23 L.Ed. 2d 274 (1969) For a plea to be constitutionally valid a defendant must have "a full understanding of what the plea connotes and of its consequences." as in DAVISON V. STATE, 405 S.W. 3d 682, 686 (Tex.Crim.App. 2013)

The Petitioner believed he was pleading to the exact same offense his co-defendant plead to ( they were charged with the same offense)(R.R. vol.4 p.24), the Petitioner was never notified in writing or orally that he was pleading to a crime with a deadly weapon as the record shows. Therefore the Petitioner is entitled to a new trial with all the relevant information required to decide whether to pled, proceed to jury trial...etc...

> 3. Petitioner was denied a fair trial and impartial judge when the judge decided punishment based on his personal knowledge of Mr. Vickers' co-defendant instead of the evidence presented at trial.

A defendant has a right to a trial before an impartial judge and deprivation of this right is a structural defect which is not waived by failing to object. see GENTRY V. STATE, No. 06-05-00237-CR, 2006 WL 932057 (Tex.App.Texarkana 2006) and ARIZONA V. FULMINATE, 499 U.S. 279, 309-10; 111 S.Ct. 1246; 113 L.Ed. 2d 302 (1991) also MENDEZ V. STATE, 138 S.W. 3d 334, 341 (Tex.Crim.App. 2004) The judge should've recused himself when he said on record that " I know Jake Sewell and I've known him for a while."(R.R. vol.4 p.76)

6

The judge's statement cannot be taken out of context, he was partial and deprived the petitioner of his guaranteed fair and impartial trial, therefore a new trial is warranted.

## PRAYER FOR RELIEF

WHEREFOE the Petitioner prays this Honorable Court grant review of this cause and set a precedent for justice being denied pro se petitioners whom are appointed counsel who do not adequately represent their clients and do stand up for them in front of blatantly partial judges.

Respecfully submitted,

*Kenneth C. Vickers*

Kenneth Craig Vickers# 1925934
Telford Unit
3899 State Hwy 98
New Boston,TX. 75570

## CERTIFICATE OF COMPLIANCE

I, Kenneth Vickers, the petitioner do hereby certify that this Petition For Discretionary Review complies with Rule 9.4 and has less than 4,500 words and is less than 15 typewritten pages.

*Kenneth C. Vickery*

Kenneth Craig Vickers #1925934
Telford Unit
3899 State Hwy 98
New Boston,TX. 75570

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above-foregoing petition for discretionary review was served by placing the same in the U,S, Mail addressed to: Will Ramsey, 8th Judicial District Attorney, PO Box 882, Sulphur Springs, TX. 75483-0882 on this **23** day of July, 2015.

*Kenneth C. Vickers*

Kenneth Vickers # 1925934
Telford Unit
3899 State Hwy 98
New Boston,TX.75570



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00072-CR

KENNETH CRAIG VICKERS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1323383

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

Kenneth Craig Vickers was indicted for burglary of a habitation with intent to commit aggravated assault and aggravated kidnapping. After entering an open plea of guilty to the indicted offense, Vickers elected to have the trial court decide punishment. After hearing the evidence, the trial court found Vickers guilty, entered a finding that he used or exhibited a deadly weapon, and sentenced him to fifty years' imprisonment. On appeal, Vickers contends (1) that his plea was involuntary because the written and oral admonishments failed to put him on notice that he was pleading guilty to an offense involving a deadly weapon and (2) that he did not receive a fair trial because the trial court failed to base its ruling solely upon the evidence adduced at trial. We affirm the trial court's judgment.

## I.     Factual Background

Around 4:30 a.m. on April 20, 2013, Jake Sewell arrived at Kenneth Craig Vickers' home and claimed that Cody Ramsey had robbed him. Sewell had learned that Ramsey was staying at Angelina Vallentine's apartment in Sulphur Springs, Texas, with Angelina's son, Jamie Lindsey. Accordingly, Sewell and Vickers travelled to Vallentine's apartment to find Ramsey. When they arrived, Sewell stayed in the car while Vickers went to the apartment, even though Vickers did not know Ramsey. Vickers knocked on the door, and when Angelina's four-year-old daughter, Sierra, opened it, Vickers brushed past her into the apartment and chastised her for allowing a complete stranger to enter her home. Once inside, Vickers pulled a "big gun" from inside his coat, yelled at Angelina's husband, Jesse, and put the gun against Jesse's head.

Vickers then took Jesse, Angelina, and Sierra to the parking lot to speak with Sewell, at which point the two men realized that none of them were Ramsey. All five of them then went back into the apartment and waited for Ramsey to return. A short time later, Ramsey arrived together with Jamie Lindsey. When Ramsey and Jamie entered the apartment and saw Sewell, Ramsey ran away, Sewell chased him, and the two men fought. When Ramsey broke free from Sewell and ran away again, Vickers and Sewell left in their vehicle to find Ramsey, taking Jamie with them.[1] Vickers and Sewell were arrested soon thereafter.

At trial, Vickers admitted that he "had been high for days" when Sewell arrived at his house that morning and that the drugs had put him "in a rage of some kind." He argued that drugs were the root of his problem and that he used methamphetamines so he could "forget about all the hardships" in his life. He also testified that using methamphetamines made him "feel powerful, like nothing [could] hurt [him]." He did not deny the events of the day in question, and even though he claimed he did not remember everything that happened, he admitted to doing "horrible things" and apologized to the Vallentines. He admitted going with Sewell to Angelina's apartment, but claimed he only intended to scare Ramsey. He also testified that he "never meant to hurt anybody."

Vickers' mother testified that when he was using drugs, his behavior "terrified" her. She testified that she could not "see him doing that under normal circumstances," but admitted it was possible if he was "on drugs and knowing the way it changes his attitude." She also testified that Vickers had suffered a serious fall as a child that caused him to have a lazy eye. As a result, he

---

[1] Jamie made a statement to police that he was not forced to go, but witnesses said he was.

3

endured bullying when he was in grade school. Vickers began drinking alcohol when he was six years old and began taking drugs when he was a teenager. Vickers has a long history of using methamphetamine,[2] and his drug use has cost him much—his parental rights to his two children were terminated, and both children have since been adopted.[3]

## II.    Were Vickers' Pleas Voluntary?

In his first point of error, Vickers argues that his guilty pleas were not made knowingly and voluntarily because the oral and written plea admonishments failed to put him on notice that he was pleading guilty to an offense involving a deadly weapon.[4] Vickers relies on *Boykin v. Alabama*, 395 U.S. 238, 244 (1969), which holds that to support a conviction based on a guilty plea, the record must affirmatively disclose that the defendant entered his plea knowingly and voluntarily. *Id.* at 243; *Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). In determining whether a guilty plea was entered knowingly and voluntarily, we consider the totality of the circumstances viewed in light of the entire record. *Griffin v. State*, 703 S.W.2d 193, 196–97 (Tex. Crim. App. 1986); *Fluellen v. State*, 443 S.W.3d 365, 368 (Tex. App.—Texarkana 2014, no pet.); *Ybarra v. State*, 93 S.W.3d 922, 925 (Tex. App.—Corpus Christi 2002, no pet.).

---

[2]To her knowledge, the longest Vickers ever spent drug-free was approximately two years.

[3]Vickers testified, "[M]y relationship with my children was good. I didn't have a case against me for [Child Protective Services] to take them. My – my children's mother did. I was around the wrong people while I was going through the case. . . . I failed a [drug] test . . . ."

[4]The deadly-weapon finding is material because under Section 3g(a)(2) of Article 42.12 of the Texas Code of Criminal Procedure, if the judgment contains a deadly-weapon finding, the defendant is not eligible for parole until the "actual calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less." TEX. GOV'T CODE ANN. § 508.145(d)(1) (West Supp. 2014).

4

Here, the indictment alleged that Vickers "intentionally and knowingly enter [sic] a habitation without the effective consent of Jesse Ballentine,[5] the owner thereof, and attempted to commit or committed the felony offense[s] of Aggravated Assault and Aggravated Kidnapping." At the plea hearing, the trial court advised Vickers that he was charged with "burglary of a habitation with intent to commit an aggravated assault." The trial court explained that "[w]ith a plea of guilty, the Court can do anything from defer adjudicating you, known as deferred adjudication community supervision -- the Court can find you guilty, sentence you to as little as 5 years in the penitentiary all the way up to 99 years or a term of life." Vickers indicated that he understood, stated that he had discussed the issue with his mother and his attorney, and expressed his intent to waive his right to a jury and enter an open plea of guilty to the charged offense. The "deadly weapon" issue was not discussed during the plea hearing.

The written plea admonishments state that Vickers was charged with "burglary habitation intend other felony" and that Vickers faced punishment for a first degree felony, having a range from five years to ninety-nine years or life. In his judicial confession, Vickers admitted that he was "guilty of each and every act as alleged in the charging instrument." On appeal, Vickers contends that the admonishments failed to provide him with notice of the possibility of a deadly-weapon finding in his case.

When the State seeks a deadly-weapon finding against a defendant, it must provide notice of that fact to the defendant before trial. *Ex parte Beck*, 769 S.W.2d 525, 527 (Tex. Crim. App.

---

[5]The apartment owner's name is spelled "Ballentine" in the indictment, while it is spelled "Vallentine" in the reporter's record.

5

1989) (citing *Ex parte Patterson*, 740 S.W.2d 766 (Tex. Crim. App. 1987)).[6] However, under certain circumstances, a defendant may receive adequate notice of a deadly-weapon issue based simply on the offense charged. *Blount*, 257 S.W.3d 712.

In *Blount*, a jury found the defendant guilty of committing or attempting to commit aggravated assault in connection with the burglary of a habitation. *Id.* at 713. Blount was also found to have used a deadly weapon. *Id.* On appeal, he argued that he was not given adequate notice of the State's intent to seek a deadly-weapon finding. *Id.* The Court of Criminal Appeals held that because a deadly weapon is "'anything that in the manner of its use or intended use is capable of causing death or serious bodily injury,'" and because aggravated assault can only be committed by either using a deadly weapon or by causing serious bodily injury, then "an allegation that a defendant committed [or attempted to commit] aggravated assault gives him notice that the deadly nature of the weapon alleged in the indictment would be an issue at trial and that the State

---

[6]In *Patterson*, the court held that the "applicant was entitled to notice that the State would pursue an affirmative [deadly weapon] finding as authorized by Article 42.12, § 3g(a)(2)." *Patterson*, 740 S.W.2d at 775. Although the court went on to discuss how notice should be provided, with one judge contending that the State was not required to plead it in the indictment and three other judges contending that it was, *Patterson* failed to resolve that issue. *See Blount v. State*, 257 S.W.3d 712, 713, n.2 (Tex. Crim. App. 2008). Then, in *Beck*, the court held that where the indictment charges death or serious bodily injury as the result of a weapon, the notice required by *Patterson* has been satisfied; yet, the jury must still make an affirmative finding that a deadly weapon was used. *Beck*, 769 S.W.2d at 528. The court also cleared up the confusion created by *Patterson* over whether the deadly-weapon issue had to be pled in the indictment, holding that it did not. *Id.* (Clinton, J., concurring). Later, in *Crumpton v. State*, 301 S.W.3d 663, 664–65 (Tex. Crim. App. 2009), the court overruled *Beck*'s conclusion that a verdict finding a defendant guilty as charged does not constitute an affirmative deadly-weapon finding. Thus, even though the court has continued to develop the type and amount of notice required by Article 42.12, Section 3g(a)(2) in the years since *Patterson*, it has never retreated from *Patterson*'s initial requirement that the State must provide a defendant with some notice of its intent to seek a deadly-weapon finding and that notice must be provided before trial.

may seek an affirmative finding on the use of the weapon." *Id.* at 714;[7] *Crumpton*, 301 S.W.3d at 664.

In the present case, the State alleged that Vickers did "intentionally and knowingly enter a habitation without the effective consent of Jesse Ballentine, the owner thereof, and attempted to commit or committed the felony offense[s] of Aggravated Assault and Aggravated Kidnapping." Unlike the indictment in *Blount*, the indictment here does not charge Vickers with aggravated assault, but with burglary of a habitation with the intent to commit aggravated assault and aggravated kidnapping. Moreover, burglary of a habitation and aggravated kidnapping can be committed without the use of a deadly weapon or without using "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* Thus, Vickers

---

[7]To fully understand why an allegation of aggravated assault places a defendant on notice that the State seeks a deadly-weapon finding, one must review the statutory definitions of assault, aggravated assault, and deadly weapon. Under Section 22.01 of the Texas Penal Code, assault can be committed in one of three ways: (1) causing bodily injury to another person; (2) threatening another person with imminent bodily injury; or (3) causing offensive or provocative contact with another person. TEX. PENAL CODE ANN. § 22.01(a)(1)–(3) (West Supp. 2014). Under Section 22.02, an assault is aggravated in one of two ways: (1) the assault causes serious bodily injury, or (2) the defendant exhibits or uses a deadly weapon in committing the assault. TEX. PENAL CODE ANN. § 22.02(a)(1)–(2) (West 2011).

Under Section 1.07, an object is a "deadly weapon" if (A) it is "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or (B) it "is capable of causing death or serious bodily injury" in the manner in which it was used or intended to be used. TEX. PENAL CODE ANN. § 1.07(a)(17)(A)–(B) (West Supp. 2014). Therefore, an object defined by Section 1.07(a)(17)(A) is a deadly weapon per se, whereas an object defined by Section 1.07(a)(17)(B) becomes a deadly weapon by the manner of its use or intended use.

When these statutory definitions are combined, a person can commit an aggravated assault in only one of three ways: (1) using any object to cause serious bodily injury; (2) using a per se deadly weapon to threaten someone with imminent bodily injury; or (3) using a per se deadly weapon to offensively or provocatively contact someone. TEX. PENAL CODE ANN. §§ 22.01(a)(1)–(3), 22.02(a)(1)–(2). If an indictment alleges the first method of aggravated assault, a deadly weapon is alleged because whatever object the defendant used became a deadly weapon when it caused serious bodily injury. If an indictment alleges the second or third method of aggravated assault, a deadly weapon is alleged because the defendant used a per se deadly weapon. Thus, no matter which method of committing aggravated assault the State alleges, it will necessarily involve the use of a deadly weapon. Consequently, when an indictment charges aggravated assault, the defendant is, legally speaking, on notice that the State seeks a deadly-weapon finding.

7

argues that *Blount* is inapplicable and that the indictment cannot provide the required deadly-weapon notice.

Nevertheless, Vickers received a copy of the indictment at his arraignment. The indictment charges him with burglary of a habitation with intent to commit aggravated assault and aggravated kidnapping. At his plea hearing, the trial court told him that he was charged with "burglary of a habitation with intent to commit an aggravated assault." Vickers pled guilty to the charge pending against him in this case, which was burglary of a habitation with intent to commit aggravated assault and aggravated kidnapping. Because the charge to which he pled guilty included both theories and because the first theory cannot be committed without either using a deadly weapon or causing serious bodily injury, then *Blount* applies and Vickers was on notice that the State would seek a deadly-weapon finding in this case.[8]

---

[8]It is true that where an indictment alleges the different methods of committing the offense in the conjunctive, the jury may be charged in the disjunctive. *Vasquez v. State*, 665 S.W.2d 484, 486–87 (Tex. Crim. App. 1984); *Zanghetti v. State*, 618 S.W.2d 383, 387–88 (Tex. Crim. App. [Panel Op.] 1981). It is also true that where alternate theories of committing the same offense are submitted to the jury in the disjunctive, it is appropriate for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted. *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1982) (op. on reh'g); *Bailey v. State*, 532 S.W.2d 316, 322–23 (Tex. Crim. App. 1976); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 1(a) (West Supp. 2014); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Thus, it is conceivable that an indictment may allege different methods of committing the offense, one of which is sufficient to provide notice of the State's intent to seek a deadly-weapon finding and one which is not. If a defendant were to be convicted on a general verdict in such a case and challenged the sufficiency of the deadly-weapon notice, the appellate court might then have to determine whether sufficient evidence supported the theory which provided the deadly-weapon notice. Nevertheless, we are not required to decide the question in this case because Vickers pled guilty to both theories.

**III. Did the Trial Court Base its Ruling upon Information Other Than the Evidence Adduced at Trial?**

In his second point of error, Vickers contends that he did not receive a fair trial before an impartial judge because the trial court based its punishment ruling on information other than the evidence adduced at trial.

"The parties have a right to a fair trial." *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). "One of the most fundamental components of a fair trial is a neutral and detached judge." *Id.* Absent clear evidence of bias or partiality found within the appellate record, we presume the trial judge acted as a neutral and detached officer. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Thompson v. State*, 641 S.W.2d 920, 921 (Tex. Crim. App. 1982), *disagreed with on other grounds by Estep v. State*, 901 S.W.2d 491 (Tex. Crim. App. 1995)); *Fielding v. State*, 719 S.W.2d 361, 366 (Tex. App.—Dallas 1986, pet. ref'd).

In this case, at the punishment hearing, the court considered the presentence investigation report, a substance abuse evaluation of Vickers, and the testimony of Angelina, Vickers, and Vickers' mother. After the presentation of evidence and after closing arguments, but before the pronouncement of sentence, the trial court made several remarks, to-wit:

> You know, I'm in an unusual situation here in that I know Jake Sewell and I've known him for a while. And as you know, I sentenced him to twenty-five years and that was difficult for me to do. Because while the thing to the defensive theory here has been meth and Jake Sewell, I am absolutely convinced that Jake Sewell has always been a follower. Jake Sewell couldn't lead himself to the bathroom. Jake Sewell, bless his heart, just ain't a real bright guy and you are and he probably did express some frustration.

> . . . .

9

I, too, believe like your mother that everybody is salvageable. But even your mother said, she can't guarantee what someone will do. And salvageable – there's a difference to me when I sentence a guy like Jake Sewell, under the circumstances that were unique to his case and the circumstances that are unique to your case, some of them are the same. Some of them are vastly different. To some degree I feel like I need to protect Jake Sewell from Jake Sewell, because he just will not stop being a knucklehead.

And there's a difference between a knucklehead and I hear – I hear the things that – look – look that day on that April 20, 2013, that wasn't me, that was a monster and I'll never be that monster again. I have not much confidence that that's the case . . . .

. . . .

I think the issues, since I've worked in mental health some time -- for quite a long time. Majored in psychology, minored in counseling. Sometimes people use drugs to mask mental illness. It's call [sic] self-medicating. Sometimes the despondency that you've sunk into, in my mind, is a result of the fact that you are an extremely intelligent person, who unlike a guy like Jake Sewell just doesn't get it. You get it. You understand how bad it is right now.

The trial court then sentenced Vickers to fifty years' imprisonment, as recommended by the State.

Vickers contends that the court's comments regarding Sewell establish that he did not receive a fair trial before an impartial judge. For Vickers to prevail on this point of error, the record must clearly demonstrate bias or partiality.[9]

---

[9]Vickers concedes that he failed to raise this due process issue in the trial court, but, citing our unpublished opinion in *Gentry v. State*, No. 06-05-00237-CR, 2006 WL 932057 (Tex. App.—Texarkana Apr. 12, 2006, no pet.) (mem. op., not designated for publication), he claims that there is no requirement to object to the neutrality of the trial court at the time of the hearing. In *Gentry*, we held that the defendant did not need to preserve his due process claim that he failed to receive a fair trial and impartial judge. *Id.* at *2. A few months after our unpublished opinion in *Gentry*, the Court of Criminal Appeals declined to address whether this issue must be preserved, and instead, the court examined the record for clear evidence of judicial bias. *Brumit*, 206 S.W.3d at 644–45. In *Brumit*, just prior to sentencing, the trial judge reflected on a case he had prosecuted before he became a judge, concluding, "'That case made me think that anybody that ever harmed a child should be put to death.'" *Id.* at 640. Finding that the trial judge's comments failed to reflect bias, partiality, or that the judge failed to consider the full range of punishment as would be necessary to find a due process violation, the Court of Criminal Appeals affirmed Brumit's sentence. *Id.* at 645. Accordingly, we do not decide whether this issue must be preserved, but will review the record for clear evidence of judicial bias.

10

In *Gentry*, a Marion County constable, Dreesen, had received reports of two men "'walking in and out of traffic or in and out of pastures and things north of Jefferson,'" Texas. *Gentry*, 2006 WL 932057, at *1. When he saw Gentry and his companion walking down the side of a highway, Dreesen stopped them, conducted a pat-down search of Gentry, and found a switchblade knife and some marihuana. *Id.* Dreesen arrested Gentry, and Gentry was charged with possession of a prohibited weapon. *Id.* Gentry moved to suppress the knife, and in denying that motion, the trial court stated,

> "You can stop. Because I'm going to be honest with you, I remember this day. I live on that road. This Motion is going to be denied because I'm one of them that almost hit them. I'm going to deny this Motion to Suppress. I'm not so sure that I wasn't one of them who called Officer Dreesen to be honest with you. I remember this day and I remember the situation. I'm going to deny the Defendant's Motion today; it's not going to be granted.

> . . . .

> Like I say, I've got firsthand knowledge of the situation . . . and I believe he has the right to do this [search the defendant].

> . . . .

> To be honest with you, my decision is based on what I saw that day."

*Id.* When the trial judge refused to recuse himself, Gentry entered into a plea agreement wherein he was placed on misdemeanor deferred adjudication community supervision for ninety days and fined $150.00. *Id.* On appeal, this Court noted that "the trial judge stated clearly that he was making his determination and ruling based, not on the evidence adduced at the hearing, but on his personal knowledge of the event." *Id.* at *3. We held that the judge's actions were void and that

11

he was disqualified "because of his stated inability to rule based solely on the evidence adduced at the trial." *Id.*

Comparing the facts of this case to those of *Gentry*, Vickers argues that the trial court here "made [its] determination of the respective culpability of the two co-defendants based on [its] personal knowledge of [Vickers'] co-defendant rather than on the evidence adduced at trial."[10] Yet, *Gentry* is distinguishable because the record here does not establish that the trial judge was a witness to the events in question. *See id.* at *3. More relevant to the present case is *Roman v. State*, 145 S.W.3d 316 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd), where the defendant sought the trial judge's recusal based on his comments prior to trial.[11]

In *Roman*, when the defendant informed the trial court that he wanted the court to decide punishment, the court told him that (1) "under a similar first-degree felony drug case, he gave the defendant life in prison," (2) "he would have given a longer sentence to [Roman's] co-defendant than the jury assessed," and (3) "a jury—and not he—should assess punishment, because he was likely to impose a higher punishment than a jury." *Id.* at 318. Roman moved to recuse the judge, arguing that the judge's statements reflected bias which eliminated Roman's option to waive a jury

---

[10]Vickers does not argue that his sentence is outside the range of punishment.

[11]It is true that a trial court cannot take judicial notice of the testimony from a previous trial unless a transcript of that testimony is admitted in the later trial. *Davis v. State*, 293 S.W.3d 794, 797 (Tex. App.—Waco 2009, no pet.). Nevertheless, "a court may take judicial notice of the existence of the testimony in a co-defendant's trial . . . [so long as the] court [does] not take judicial notice of the truth of the factual content of that testimony because its accuracy can reasonably be questioned." *Id.* (citing *Resendez v. State*, 256 S.W.3d 315, 324 (Tex. App.—Houston [14th Dist.] 2007, pet. granted)). In *Roman*, as in this case, the trial court was not taking judicial notice of prior testimony from a separate case to resolve disputed facts in the case before it, but simply comparing the culpability of the two co-defendants based upon his observations of the evidence presented in both trials. By contrast, in *Gentry*, the trial judge was resolving disputed factual issues in the defendant's suppression hearing based upon his personal observations of the events in question. Thus, *Gentry* is distinguishable from *Roman* and from the present case.

12

and go to the trial court on punishment. *Id.* Roman's motion to recuse was denied, the case went to trial, and a jury assessed Roman's punishment at forty years' imprisonment and a $50,000 fine. *Id.* at 318–19. Roman argued that the administrative judge erred in failing to recuse the trial judge. *Id.* at 319.

Roman argued that the trial judge's comments showed extrajudicial bias. *Id.* at 321. The court of appeals first noted that Black's Law Dictionary defines "extrajudicial" as "something taking place '[o]utside court' or 'outside the functioning of the court system'" and that it defines "out-of-court" as "'[n]ot done or made as a part of a judicial proceeding,' as a synonym to the word *extrajudicial.*'" *Id.* The court of appeals went on to find that the judge's comments did not stem from an extrajudicial source because they represented "'opinions formed . . . on the basis of facts . . . or events occurring in the course of the current proceedings, or of prior proceedings.'" *Id.* at 321–22 (quoting *Andrade v. Chojnacki*, 338 F.3d 448, 462 (5th Cir. 2003)). Accordingly, the court affirmed the trial court's judgment.[12] *Id.* at 322.

Here, the trial court heard all the evidence and the arguments of both sides before making its comments regarding the co-defendant, Sewell. The trial court noted that it had previously presided over the State's case against Sewell for the events in question. Pursuant to *Roman*, to the extent that the judge's knowledge of Sewell was gained in a previous proceeding, it is not extrajudicial. *See id.* at 321–22.

---

[12]Although *Roman* involved the denial of a motion to recuse the trial judge, whereas the present case involves alleged extrajudicial bias by the judge in sentencing, the issue is the same: whether the trial judge is biased by his possession of information obtained outside of the case before him. Thus, *Roman* is applicable to this case.

13

Yet, even if the information had come from an extrajudicial source, it would not change the outcome of this case because the judge's comments about Sewell identified mitigating factors that justified a lesser sentence for Sewell, not aggravating factors justifying a higher sentence for Vickers. In fact, the aggravating factors relied upon by the court in imposing Sewell's higher sentence—that (a) Vickers was "an extremely intelligent person," (b) as opposed to the simple thefts or burglaries usually related to drug addiction, this was a "horrific home invasion" perpetrated by Vickers, and (c) Vickers held the Vallentine family, including a four-year-old child, at gunpoint as part of a "well calculated and planned effort"—were all derived from the evidence presented in Vickers' case.[13] Thus, the trial court based its ruling on the evidence before it, and the aggravating factors identified by the trial judge justified Vickers' fifty-year sentence. Consequently, Vickers has failed to establish that he did not receive a fair trial before an impartial judge. Accordingly, we overrule this point of error.

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:    March 4, 2015
Date Decided:      April 27, 2015

Publish

---

[13]Even when the trial judge referred to his prior training and experience in psychology and counseling, his ultimate conclusion was that Vickers was "an extremely intelligent person," which was supported by the evidence presented at trial.

14