

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00057-CR

CHARLES WADE BRIGGS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-20-27898

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

On the night of July 21, 2017, at least three men forced their way into the home of Gina and Johnnie Jones, and while one of the men subdued Gina, the other men subdued Johnnie and shot him at close range in the back of his head. As a result, a Fannin County jury convicted Charles Wade Briggs of attempted[1] murder,[2] burglary of a habitation with intent to commit aggravated assault,[3] and engaging in organized criminal activity.[4] In this appeal,[5] Briggs challenges his conviction for burglary of a habitation with intent to commit aggravated assault. He contends (1) that there was insufficient evidence to support the jury's verdict that he committed burglary of a habitation, (2) that the trial court erred when it failed to give an accomplice witness instruction, (3) that the evidence does not corroborate the testimony of the accomplice witness, (4) that there was insufficient evidence to support the jury's deadly weapon finding, and (5) that he did not receive notice of the State's intent to seek a deadly weapon finding. We will affirm the trial court's judgment of conviction.

Regarding Briggs's second, third, and fourth issues, Briggs raised identical issues and made virtually identical arguments in the appeal of his attempted murder conviction. Because

---

[1]See TEX. PENAL CODE ANN. § 15.01.

[2]See TEX. PENAL CODE ANN. § 19.02(b)(1). Briggs was sentenced to twenty years' imprisonment for attempted murder.

[3]See TEX. PENAL CODE ANN. § 30.02(a)(1), (d)(2). Briggs was sentenced to ten years' imprisonment for burglary of a habitation with intent to commit aggravated assault.

[4]See TEX. PENAL CODE ANN. § 71.02(a) (Supp.). Briggs was sentenced to forty-five years' imprisonment for engaging in organized criminal activity.

[5]In his appeal in our cause number 06-22-00056-CR, Briggs appeals his conviction for attempted murder, and in his appeal in our cause number 06-22-00058-CR, Briggs appeals his conviction for engaging in organized criminal activity.

2

these issues are identical to those addressed in our opinion dated this date in *Briggs v. State*, cause number 06-22-00056-CR, we overrule these issues for the reasons stated in that opinion. Further, because we have fully set forth the evidence presented at trial in our opinion in cause number 06-22-00058-CR, we will not repeat it here.

## I.      Sufficient Evidence Supported the Jury's Verdict

In his first issue, Briggs contends that there was insufficient evidence to support the jury's verdict that he was guilty of burglary of a habitation with intent to commit aggravated assault.  Briggs argues that there was no evidence that he entered Johnnie's house, that he knew or anticipated that a burglary and aggravated assault would be committed, that he solicited or aided others to commit the offense, or that he conspired with others to do so.

### A.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt."  *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)).  "Our rigorous legal sufficiency review focuses on the quality of the evidence presented."  *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)).  "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Paroline v. State*, 532 S.W.3d 491, 498 (Tex. App.—Texarkana 2017, no pet.) (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Williamson*, 589 S.W.3d at 297–98 (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* at 297 (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

### B. Analysis

Briggs was charged with burglary of a habitation with intent to commit aggravated assault. Because the evidence supported the theory that Briggs might be liable as a party, the court's charge included instructions that allowed the jury to convict Briggs either as a primary actor or as a party.[6] Under the statute and the indictment, in order to convict Briggs, as a primary actor, of burglary of a habitation with intent to commit aggravated assault, the State had to show, beyond a reasonable doubt, that Briggs (1) entered a habitation (2) without the effective consent of the owner thereof, Johnnie,[7] (3) with the intent to commit aggravated assault. *See* TEX. PENAL CODE ANN. § 30.02(a), (d); *Morrow v. State*, 486 S.W.3d 139, 164 (Tex. App.—Texarkana 2016, pet. ref'd). A person commits an "aggravated assault if the person commits an assault and (1) causes serious bodily injury to another; or (2) uses or exhibits a deadly weapon during the commission of the assault." *McDonald v. State*, No. 06-21-00059-CR, 2022 WL 23822, at *2, n.4 (Tex. App.—Texarkana Jan. 4, 2022, no pet.) (mem. op., not designated for publication)

---

[6]*See Tate v. State*, 811 S.W.2d 607, 607 n.3 (Tex. Crim. App. 1991) ("[I]f the evidence supports a charge on the law of parties, the court may charge on the law of parties even though there is no such allegation in the indictment.").

[7]Briggs does not contest that Johnnie's house was a habitation or that Johnnie was the owner of the habitation, as those terms are defined under the Texas Penal Code. *See* TEX. PENAL CODE ANN. §§ 1.07(35)(A), 30.01(1).

(citing TEX. PENAL CODE ANN. § 22.02(a) (Supp.)). "A person commits an [assault if he] intentionally, knowingly, or recklessly causes bodily injury to another." TEX. PENAL CODE ANN. § 22.01(a)(1) (Supp.).

The State tried the case, and the jury was charged, on the alternative theory that Briggs was liable as a party. Under that theory, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01. As applicable to this case, a person is criminally responsible for an offense committed by another person in two ways. First, the person is responsible for the conduct of another person if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2). Second, the person is responsible for the conduct of another person if,

> in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b).

Under the first of these ways, § 7.02(a)(2), "[t]he words 'acting with intent to promote or assist the commission of the offense' clearly mean, at a minimum, that a defendant must act intentionally with respect to the result elements of a result-oriented offense." *Nava v. State*, 415 S.W.3d 289, 298–99 (Tex. Crim. App. 2013)

The first variant of aggravated assault—by causing serious bodily injury—is a result-oriented offense. *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008). Consequently, for the offense of burglary of a habitation with the intent to commit aggravated assault by causing bodily injury, the intent to promote or assist includes not only the commission of the burglary of a habitation, but also the result of the aggravated assault, *i.e.*, the serious bodily injury of Johnnie. *See Nava*, 415 S.W.3d at 300.

"The second variant of aggravated assault—assault while using a deadly weapon—is a 'nature of the conduct offense.'" *Hall v. State*, 145 S.W.3d 754, 758 (Tex. App.—Texarkana 2004, no pet.) (citing *Guzman v. State*, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.)). "This is because the Texas Legislature has proscribed the method in which the actor commits the assault, regardless of the outcome of that conduct." *Id.* "A person acts intentionally, or with intent, with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct." TEX. PENAL CODE ANN. § 6.03(a). As a result, the offense of burglary of a habitation with the intent to commit aggravated assault by using or exhibiting a deadly weapon during the commission of the assault requires that the intent to promote or assist include not only the intent to commit the burglary of a habitation, but also the intent that a deadly weapon be used or exhibited during the commission of the assault.

To prove party liability, "[t]he necessary specific intent can be proven through circumstantial evidence, and we may rely on events that took place before, during, or after the commission of the offense." *Cary v. State*, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016) (citing *Wygal v. State*, 555 S.W.2d 465 (Tex. Crim. App. 1977)). "The jury may infer the requisite

7

mental state from (1) the acts, words, and conduct of the defendant, (2) the extent of the injuries to the victim, (3) the method used to produce the injuries, and (4) the relative size and strength of the parties." *Rhymes v. State*, 536 S.W.3d 85, 95 (Tex. App.—Texarkana 2017, pet. ref'd) (citing *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995)). Further, "the jury may . . . infer intent from any facts in evidence which it determines prove[] the existence of [an] intent to kill, such as the use of a deadly weapon." *Id.* (quoting *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003)). Indeed, when a deadly weapon is used in a deadly manner, it is not only reasonable to infer an intent to kill, the inference of intent to kill is well-nigh conclusive. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993).

"In determining whether an appellant is a party to an offense, we may consider 'events before, during, and after the commission of the offense.'" *Rhymes*, 536 S.W.3d at 94 (quoting *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012)). We may also consider circumstantial evidence to determine party status. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (citing *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1996)). "Without evidence of intentional participation by the accused, an accused may not be convicted under the law of parties." *Cary v. State*, 507 S.W.3d 750, 758 (Tex. Crim. App. 2016) (citing *Acy v. State*, 618 S.W.2d 362 (Tex. Crim. App. [Panel Op.] 1981)). For that reason, "mere presence of a person at the scene of a crime, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense." *Gross*, 380 S.W.3d at 186.

In this case, the evidence, construed in the light most favorable to the jury's verdict, showed that the night before the attack on Johnnie, Briggs called Johnnie and threatened to send

8

someone over to take care of him because he believed Johnnie was selling drugs to his son, Josh. The next day, Briggs called his brother, Shane, whom Briggs knew to be in a violent biker gang, and Shane met him at his house within hours of the call, along with several fellow gang members. After Shane and his friends arrived, they conversed with Briggs and Josh in the driveway, where they prepared their weapons, including several firearms. The group then proceeded to Johnnie's house and used Josh, who was familiar to Gina[8] and Johnnie, to gain entrance to the house. After Josh gained entry, Shane, Briggs, and other members of the group incapacitated Gina and rushed to attack Johnnie at the back of the house. According to Johnnie, three men attacked him, one of whom he identified as Josh's dad, who told him, "I called you and I told you that I was going to send somebody to take care of you," immediately before Johnnie was shot point-blank in the back of his head.

Afterward, Briggs emphasized to his family that Shane was not kidding when he threatened to kill them if they disclosed his involvement, and Briggs immediately formulated an alibi that the family was instructed to use. Over the next three years, when the incident came up in conversation, Briggs bragged that they got away with it. Also, when Sapphire[9] threatened to leave Josh, Briggs reminded her that she knew too much and told her that they knew how to kill a person and that the same could happen to her.

The jury, as the trier of fact, was "the sole judge of the credibility of the witnesses and the weight to be given their testimony," *Williamson*, 589 S.W.3d at 297, and could resolve any

---

[8]Gina is Johnnie's wife.

[9]Sapphire is Josh's ex-wife.

conflicts in witnesses' testimony. Consequently, they could have found Sapphire's and Logan's[10] testimony regarding what Josh told them happened at Johnnie's house credible. That testimony established that Briggs entered Johnnie's house without Johnnie's consent. Further, based on the evidence of Briggs's threats, his soliciting the assistance of a violent gang, his active participation in the events leading up to, during, and after the shooting, and the use of a deadly weapon fired point-blank into the back of Johnnie's head, the jury could have reasonably inferred that Briggs had the intent to assist or promote the burglary of Johnnie's house with the intent to commit aggravated assault and that he had the intent to either cause serious bodily injury to Johnnie or that a deadly weapon be used or exhibited in assaulting Johnnie. This same evidence showed that Briggs was an active participant in the planning, preparation, and execution of the burglary of Johnnie's house.

For those reasons, we find that sufficient evidence supported the jury's finding that Briggs was a party to the burglary of Johnnie's habitation with the intent to commit aggravated assault.[11] We overrule this issue.

## II.     Briggs Had Notice of the State's Intent to Seek a Deadly Weapon Finding

Briggs also complains that he was not given notice that the State would seek a deadly weapon finding. Although he acknowledges that an indictment's allegations may be sufficient to provide such notice, he argues that the indictment in this case was not sufficient to give him adequate notice.

---

[10]Logan is Josh's sister.

[11]Because we find that there was sufficient evidence to support the jury's verdict under the promote-or-assist theory of party liability, we do not address the evidence supporting the conspiracy theory of party liability.

10

"When the State seeks a deadly-weapon finding against a defendant, it must provide notice of that fact to the defendant before trial." *Vickers v. State*, 467 S.W.3d 90, 94 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Ex parte Beck*, 769 S.W.2d 525, 527 (Tex. Crim. App. 1989)). "However, under certain circumstances, a defendant may receive adequate notice of a deadly-weapon issue based simply on the offense charged." *Id.* (citing *Blount v. State*, 257 S.W.3d 712, 713–14 (Tex. Crim. App. 2008)).

In *Blount v. State*, the Texas Court of Criminal Appeals held that an indictment that alleged that the defendant committed burglary of a habitation in which he committed or attempted to commit aggravated assault was adequate notice that a deadly weapon finding would be sought. The court explained:

> Aggravated assault may be committed in only two ways: (1) by "caus[ing] serious bodily injury" or (2) by "us[ing] or exhibit[ing] a deadly weapon during the commission of the assault." Each of these involves the use of a deadly weapon. The first way necessarily implies the use of a deadly weapon, which is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." The second way specifies the use of a deadly weapon. Therefore an allegation that a defendant committed aggravated assault gives him notice that the deadly nature of the weapon alleged in the indictment would be an issue at trial and that the State may seek an affirmative finding on the use of the weapon.

*Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008) (citations omitted).

In *Vickers*, we applied the reasoning in *Blount* when "[t]he indictment charge[d the defendant] with burglary of a habitation with intent to commit aggravated assault and aggravated kidnapping. *Vickers*, 467 S.W.3d at 96. We reasoned that even if aggravated kidnapping can be committed without using a deadly weapon, because aggravated assault "cannot be committed

11

without either using a deadly weapon or causing serious bodily injury, then *Blount* applies, and Vickers was on notice that the State would seek a deadly-weapon finding in this case." *Id.*

In this case, the indictment charged Briggs with burglary of a habitation with intent to commit aggravated assault. For that reason, *Blount* and *Vickers* apply, and we find Briggs had sufficient notice that the State would seek a deadly weapon finding in this case.[12] We overrule this issue.

## III. Disposition

For the reasons stated, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted: January 27, 2023
Date Decided: April 21, 2023

Do Not Publish

---

[12]Briggs also had notice that a deadly weapon finding would be sought because, in a separate indictment arising out of the same criminal episode, he was charged with attempted murder by shooting Johnnie in the head with a firearm. *See Brooks v. State*, 847 S.W.2d 247, 249 (Tex. Crim. App. 1993) (per curiam) (orig. proceeding) (holding that, when defendant knew of the charges alleged against him, knew that they arose out of the same criminal episode, and knew that the State alleged use of a deadly weapon during the course of the criminal episode in a separate indictment, the defendant had actual notice that the State would seek a deadly weapon finding).

12