

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00220-CR
_____

RICHARD TURNER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 13F0312-102

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

Richard Turner was convicted by a jury of burglary of a habitation with intent to commit aggravated assault[1] and was sentenced to twenty-five years' incarceration. On appeal, Turner complains that he has been subjected to two double-jeopardy violations, that he received ineffective assistance of counsel, and that he received insufficient notice of the State's intent to seek a deadly-weapon finding. We reject Turner's claims and affirm the trial court's judgment, as modified to reflect conviction of the proper offense.

## I.       Background

Angered at the refusal of his estranged wife, Amy Turner (Amy), to reconcile with him, Turner showed up at her apartment, kicked open the door, beat her head with his fists, and threw her down the stairs. Although Amy was then able to flee in her vehicle, Turner pursued her in his truck, chased her down the interstate highway, and rammed her car with his truck. This ramming disabled Amy's car, and she was forced to open the door when the car's interior began filling with smoke. At that point, Turner forced Amy into his truck and drove her to a remote location, where he continued to beat her. Turner eventually drove Amy back to her apartment, where police officers were awaiting his arrival, freeing Amy from him.

Turner was arrested and charged with various forms of burglary of a habitation. Count one of the indictment recited that Turner committed burglary of a habitation by entering the habitation and either attempting to commit or actually committing the felony offense of aggravated assault. The second paragraph of count one charged Turner with burglary of a habitation with the intent to

---

[1]*See* TEX. PENAL CODE ANN. § 30.02 (West 2011).

2

commit the felony offense of aggravated assault. Count two of the indictment charged Turner with burglary of a habitation with the intent to commit assault. The final paragraph of the indictment recited that Turner committed burglary of a habitation and attempted to commit, or committed, an assault against Amy. The jury convicted Turner of burglary of a habitation with the intent to commit aggravated assault.

## II. Double Jeopardy

### A. Acquittal Judgments for Burglary of a Habitation Do Not Implicate Double Jeopardy Protections

The trial court pronounced sentence and entered a judgment of conviction against Turner for burglary of a habitation with intent to commit aggravated assault on September 18, 2015. The judgment of conviction thus pertains to the second paragraph of count one of the indictment. The trial court likewise entered two judgments acquitting Turner of the charge of burglary of a habitation, each ostensibly acquitting Turner of the indicted offenses of burglary of a habitation with the intent to commit assault and burglary of a habitation while attempting to commit or committing assault. Each judgment of acquittal[2] includes the notation "COUNT TWO." Accordingly, one judgment of acquittal pertains to the first paragraph of count two, and the second judgment of acquittal pertains to the second paragraph of count two. The "Date Judgment Entered" portion of each judgment indicates that the respective judgments were entered on September 18, 2015. Each judgment was signed by the trial court on October 9, 2015.

---

[2]A "judgment of acquittal" is "[a] judgment, rendered on the defendant's motion or court's own motion that acquits the defendant of the offense charged when the evidence is insufficient." *Judgment of Acquittal*, BLACK'S LAW DICTIONARY (10th ed. 2014).

Turner claims that the two judgments entered by the trial court acquitting him of (1) burglary of a habitation with the intent to commit assault, and (2) burglary of a habitation while attempting to commit or committing an assault invalidate the judgment of conviction because burglary of a habitation with intent to commit aggravated assault (the crime of which Turner was convicted) could not be proven unless all of the elements of burglary of a habitation were likewise proven. Because Turner claims he was acquitted of burglary of a habitation, he contends that the Fifth Amendment Double Jeopardy Clause of the United States Constitution bars his conviction for the greater offense of burglary of a habitation with intent to commit aggravated assault. Because the jury was never asked to determine Turner's guilt for the offenses on which the judgments of acquittal are based, those judgments do not implicate double-jeopardy considerations. Moreover, Turner's conviction occurred before the judgments of acquittal were entered.

The Double Jeopardy Clause states, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V. "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '(a) [sic] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting (a defendant) [sic] twice in jeopardy, and thereby violating the Constitution.'" *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977) (alterations in original) (quoting *Ball v. United States*, 163 U.S. 662, 671 (1896)). Here, however, Turner seeks to utilize this protection as a sword rather than a shield, essentially claiming that after a jury verdict of guilt was entered against him on the primary offense, the subsequent judgments of acquittal eviscerate his conviction. This reasoning must fail.

4

"[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action." *Id.* (citing *United States v. Sisson*, 399 U.S. 267, 270 (1970)). Instead, "the ruling of the judge, whatever its label," must represent "a resolution, correct or not, of some or all of the factual elements of the offense charged." *Id.* The acquittals at issue do not meet this test.

Although Turner was charged with four crimes by indictment, the court's charge only presented the jury with the options of finding Turner guilty of (1) burglary of a habitation with intent to commit aggravated assault, (2) burglary of a habitation, or (3) criminal trespass of a habitation. The "Forms of Verdict #1" gave the jury the option to find Turner guilty or not guilty of burglary of a habitation with intent to commit aggravated assault as charged in the indictment. Following the recitation of those two options, the jury was instructed, "If you find the Defendant guilty of Burglary of a Habitation with Intent to Commit Aggravated Assault[,] you will not answer any other questions relating to Cause No. 13F0312-102." The jury was then instructed that if it found Turner not guilty of burglary of a habitation with intent to commit aggravated assault, it was to "consider the lesser offense of Burglary of a Habitation." Because the jury found Turner guilty of burglary of a habitation with intent to commit aggravated assault, it did not answer any additional questions related to the recited cause number. The jury, therefore, never entered a finding that Turner was not guilty of burglary of a habitation or any offense listed in count two of the indictment.

After the presentation of the evidence at trial, the jury returned to the courtroom with a verdict. The jury foreman informed the trial court that the jury's verdict was unanimous. The trial court then announced the verdict in open court on September 17, 2015, by reading, "We, the jury,

5

find the defendant, Richard Turner, guilty in Cause No. 13F312-102 of burglary of a habitation with intent to commit aggravated assault as charged in the indictment, and it's signed by the presiding juror." The trial court then informed the jury that the guilt/innocence phase of the trial was concluded and recessed the jury. Following the punishment phase of the trial, the trial court entered three written judgments. The judgment of conviction of burglary of a habitation with intent to commit aggravated assault properly memorialized the jury's sole verdict of conviction in this case.

The court's charge did not give the jury the option of determining Turner's guilt with respect to the offense of burglary of a habitation with the intent to commit assault or burglary of a habitation while attempting to commit or committing an assault. Consequently, the trial court's two judgments of acquittal on count two of the indictment were improper because they failed to memorialize any verdict of the jury. Moreover, because the charge of the court did not provide the jury with the option to find Turner guilty of either of the offenses alleged in count two of the indictment, Turner was not in jeopardy of conviction for those offenses when the court's charge was read to the jury.

It is also true that Turner stood convicted of the offense of burglary of a habitation with intent to commit aggravated assault before the acquittal judgments were rendered. Turner was convicted when the jury found him guilty, the verdict was announced in open court, and the guilt phase of the trial concluded. The actual judgment of conviction merely memorialized the jury's verdict of guilt. *See, e.g.*, *Dunn v. State*, 176 S.W.3d 880, 885 (Tex. App.—Fort Worth 2005, no pet.) (court may not receive verdict in criminal trial and enter judgment different from that called

6

for by jury verdict); *Chafin v. State*, 95 S.W.3d 549, 555 (Tex. App.—Austin 2002, no pet.) (trial court may not enter a different judgment from that called for by verdict).

Turner, nevertheless, relies on *Fong Foo v. United States*, 369 U.S. 141 (1962) (per curiam), in which the trial court directed a verdict of acquittal before the prosecution finished presenting its evidence. *Id*. at 142. While the trial court's action was recognized as "egregiously erroneous," the Supreme Court determined that the Double Jeopardy Clause prohibited the court of appeals from setting aside the verdict of acquittal and subjecting the defendant to another trial. *Id*. at 143. In that case, however, the judgment, although erroneous, resolved some, if not all, of the factual elements of the offense charged, and the judgment of acquittal was the sole judgment.

Here, the purported judgments of acquittal did no such thing. The offense for which Turner was tried and of which he was convicted was burglary of a habitation with intent to commit aggravated assault. Because the jury was never asked to resolve any factual issues with respect to the offenses listed in count two of the indictment, the trial court had no basis on which to enter the judgments of acquittal. The trial court's entry of these judgments is more akin to a clerical error than a judgment based on an erroneous foundation, as was the case in *Fong Foo*. Turner's reliance on *Fong Foo* is therefore misplaced.

Further, Turner's argument fails to embrace the risks associated with double jeopardy. "The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) 'It protects against a second prosecution for the same offense after acquittal. [(2) It] protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense.'" *Illinois v. Vitale*, 447 U.S. 410, 415

7

(1980) (alterations in original) (quoting *N. Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 797–803 (1989)); *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex. Crim. App. 1994). Because this case does not involve a second prosecution for the same offense after acquittal, the Constitutional double-jeopardy protection fails to shield Turner. There was but one prosecution in this case, and Turner was convicted. Turner does not claim that due to the trial court's judgments of acquittal, he is subject to a second prosecution for the same offense after conviction.[3] Finally, the prohibition of double jeopardy protects against multiple punishments for the same offense. Although Turner claims this protection in a different point of error, this protection does not aid his argument that the judgments of acquittal, entered after conviction, essentially eviscerate his conviction of burglary of a habitation with intent to commit aggravated assault. Turner has failed to demonstrate any violation of the Double Jeopardy Clause, and we overrule this point of error.

## B. No Multiple-Punishment Double Jeopardy Violation

In a single jury trial, Turner was convicted of burglary of a habitation with intent to commit aggravated assault and of aggravated assault with a deadly weapon.[4] Turner was sentenced to five years' incarceration as a result of the conviction of aggravated assault, to run concurrently with the sentence for his burglary conviction. Amy was the victim of both offenses. Turner contends that these dual convictions, for offenses committed against the same victim, amount to a double-

---

[3]Turner does not contend that the evidence is legally insufficient to support the jury's verdict of conviction.

[4]Turner filed separate appeals from his two convictions. Each conviction stems from a separate indictment. Our opinion in Turner's companion appeal, styled *Richard Turner v. The State of Texas*, cause number 06-15-00221-CR, is issued of even date herewith.

jeopardy violation because he has suffered two punishments for the same offense. Turner did not raise a double-jeopardy objection in the trial court.

Unless "the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests," *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000), a double-jeopardy claim must generally "be raised in the trial court to preserve the error for appellate review." *Honeycutt v. State*, 82 S.W.3d 545, 547 (Tex. App.—San Antonio 2002, pet. ref'd).

In the multiple-punishment context, a double-jeopardy violation is clearly apparent on the face of the record when the record affirmatively shows "multiple punishments resulting from the commission of a single act that violated two separate penal statutes, one of which is subsumed in the other." *McCrary v. State*, 327 S.W.3d 165, 171 (Tex. App.—Texarkana 2010, no pet.) (citing *Cervantes v. State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991)). The greater offense in the instant case is burglary of a habitation with intent to commit aggravated assault. The lesser offense is aggravated assault with a deadly weapon. The greater offense required showing intent to commit aggravated assault, while the lesser offense required showing commission of the aggravated assault. *Compare* TEX. PENAL CODE ANN. § 30.02(a)(1) *with* TEX. PENAL CODE ANN. § 22.02(a) (West 2011). Consequently, aggravated assault is not a lesser-included offense of burglary with the intent to commit aggravated assault. *Jacob v. State*, 892 S.W.2d 905, 909 (Tex. Crim. App. 1995). The Court of Criminal appeals explained that

> [w]hile it may be true that when the State proves an aggravated assault, the proof shows an intent to commit the assault, under Article 37.09(1) facts showing a completed assault are not "required" to prove the intent to commit such assault. Intent to commit requires less proof. While it certainly *may* be used to show that

9

> intent, it is not legally *required* because intent to commit can be established by facts showing something less than commission of the offense.

*Id*. Because burglary of a habitation with the intent to commit aggravated assault and aggravated assault do not involve the same elements, no double jeopardy violation clearly appears on the face of the record.[5] We overrule this point of error.

## III.    Turner Did Not Receive Ineffective Assistance of Counsel

### A.    Uncounseled Misdemeanor Conviction

During the course of the punishment trial, the State introduced, without objection, a misdemeanor probation order entered in 1988 (probation order), resulting from Turner's guilty plea to the charge of driving while intoxicated (DWI). The order indicates that Turner was not represented by counsel when he entered his guilty plea. It further indicates that Turner waived a jury trial and submitted the cause to the court.[6] A waiver of the right to counsel does not appear on the face of the order. Turner claims that his counsel was ineffective in failing to object to the introduction of the uncounseled probation order.

The Sixth Amendment to the United States Constitution grants an accused the right to have the assistance of counsel for his defense, a right that has been interpreted to require the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The right to effective assistance of counsel does not mean, however, that counsel's performance must be errorless or

---

[5]The State points out that there were two separate instances of aggravated assault, the first of which occurred at Amy's apartment, and the second of which occurred at Turner's home in Hooks, when Turner put a gun to Amy's head. Consequently, no multiple-punishment double-jeopardy violation has been shown.

[6]Turner was sentenced to sixty days' confinement in the Bowie County Jail. The sentence was suspended, and Turner was placed on probation for a period of two years.

perfect. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). A conviction resulting from ineffective assistance of counsel is constitutionally infirm. *Strickland*, 466 U.S. at 688.

Ineffective assistance of counsel claims are evaluated under the two-part test formulated in *Strickland*, requiring a showing of both deficient performance and prejudice. *Id.* at 689; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Fox v. State*, 175 S.W.3d 475, 485 (Tex. App.—Texarkana 2005, pet. ref'd). Ineffective assistance of counsel claims must be firmly rooted in the record, with the record itself affirmatively demonstrating the alleged ineffectiveness. *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 n.14 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697.

If this Court "can conceive potential reasonable trial strategies that counsel could have been pursuing," then we cannot conclude that counsel's performance was deficient. *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). To establish deficient performance on direct appeal, Turner must show that "under prevailing professional norms," *Strickland*, 466 U.S. at 688, "no competent attorney would do what trial counsel did or no competent attorney would fail to do what trial counsel failed to do." *Lampkin v. State*, 470 S.W.3d 876, 898 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Andrews*, 159 S.W.3d at 102).

In light of the fact that Turner was apparently not represented by counsel at the plea hearing resulting in the probation order and since there is no indication in the order that Turner waived his right to counsel, defense counsel could have validly maintained that the probation order was

11

presumptively void and, therefore, inadmissible even in the punishment phase of trial. *See Burgett v. Texas*, 389 U.S. 109, 114 (1967) (records of prior conviction "on their face raise[d] a presumption that petitioner was denied his right to counsel in the [prior] proceeding, and therefore . . . his conviction was void").

Assuming counsel was deficient in failing to object to the admissibility of the probation order, we examine the issue of whether Turner was prejudiced under the second prong of *Strickland*. For the punishment phase, our inquiry is whether there is a reasonable probability that the assessment of punishment would have been less severe in the absence of defense counsel's deficient performance. *Wiggins*, 539 U.S. at 534; *Lair v. State*, 265 S.W.3d 580, 595 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). Prejudice is established if the probability that the outcome would have been different is "sufficient to undermine confidence in the outcome" of the proceeding. *Strickland*, 466 U.S. at 669.

General factors to be considered in the evaluation of "whether a defendant has established *Strickland* prejudice during the punishment phase of non-capital cases as a result of deficient attorney performance of any kind" include whether the defendant received the maximum sentence, any disparity between the sentence imposed and the sentence requested by the respective parties, the nature of the offense charged and the strength of the evidence presented at trial, the egregiousness of the error, and the defendant's criminal history. *Lampkin*, 470 S.W.3d at 922.

Here, Turner was sentenced to twenty-five years' confinement for his conviction of burglary of a habitation with intent to commit aggravated assault. The defense asked the jury to impose a term of ten years or less, and to place Turner on community supervision. The State

12

argued for a minimum sentence of twenty-three years—one year for every year Turner had abused women. Although Turner violently kicked in the door to Amy's home with the intent to commit the felony offense of aggravated assault, he received a sentence on the low end of the sentencing range for this violent crime. The State developed the evidence of the commission of this crime at trial, and that evidence was strong. The evidence included testimony from the victim, Amy.

Amy explained that after she had been married to Turner for fifteen years, she moved out of the marital home and rented an apartment at the Krystal Plex Apartments. On May 2, 2013, she met Turner at a local restaurant at his request. Turner informed Amy that he was sick and that the doctor believed he had cancer. Amy agreed to Turner's request that she return home. Amy did not, however, go to Turner's house after she left the restaurant. Instead, she returned to her apartment and locked the door. While in the bedroom, Amy heard banging and loud yelling. Turner had kicked the apartment door in and entered Amy's home. Turner immediately began to hit and kick Amy and then straddled her and hit her in the head. He then pushed Amy down the stairs while cursing and screaming at her. Amy attempted to get in her car, and Turner pushed her to the ground. She was finally able to get in her car and flee the scene in her automobile.

Turner followed Amy as she fled in her vehicle and began ramming her car with his truck. She was forced to pull over on the side of Interstate Highway 30 (I-30) when her car began filling with smoke. Turner then forced Amy into his truck and drove to the Red River Bridge.[7] He parked underneath the bridge, where he continued to strike Amy in the face and on the head. Turner then

---

[7]We take judicial notice that the Red River Bridge is on Texas State Highway 8, some miles north of I-30, and traverses the Red River from Texas into Oklahoma over twenty miles northwest of Texarkana.

pulled out a gun, placed it on the console, and told Amy that if she tried to run, he would hurt her. Turner then directed Amy to call 9-1-1 to report that her apartment had been broken into and that her car had been stolen. Thereafter, Turner drove Amy to his home in Hooks, where he continued to beat her and eventually put a gun to her head. At that point, Turner began receiving text messages from a co-worker asking him what was going on. Turner's girlfriend arrived after Turner contacted her and drove Turner and Amy to Amy's apartment. When they arrived at the apartment, the police were there, and Turner let Amy out of the car. Amy's forehead was swollen, both eyes were blackened, she had a dent on the top of her head, her arms and stomach were bruised, and her lip was bleeding.

Turner's twenty-five-year sentence for this first degree felony offense (which bears a penalty range as high as ninety-nine years' or life imprisonment) weighs in favor of a lack of prejudice. The strength of the evidence presented at trial likewise weighs in favor of a finding of no prejudice.

The egregiousness of the error is another factor we must weigh. This factor is measured by "the relationship between the amount of effort and resources necessary to have prevented the error as compared to the potential harm from that error." *Id.* at 919. Here, it would have been a simple task for defense counsel to examine the probation order to determine that Turner was evidently not represented by counsel at the hearing resulting in his DWI conviction. The potential harm from this error, however, appears to have been minimal. Turner contends that the jury failed to recommend community supervision for his first degree felony crime because the State implied

14

that his third misdemeanor DWI conviction should have been a felony conviction. This statement was made during the State's opening statement of the punishment trial:

> What you are also going to hear is this individual has been convicted three times of DWI. He has three misdemeanor convictions. I don't know how the third one was a misdemeanor, because in Texas, your third one is supposed to be a felony, but he caught a break. He's not going to catch a break today.

However, during cross-examination, Turner testified that he believed that people who seek community supervision should take responsibility for what they have done. Although Amy and several other witnesses testified of her abuse at the hands of Turner, and although Turner's former wife, Susan, testified at length about her abuse at the hands of Turner, Turner testified that he had never struck either one of his former wives. Turner further testified that the witnesses who testified that he abused Amy lied. Finally, Turner was asked, "You are in here lying under oath, and you think they're going to put you on probation?" Turner responded, "I'm hoping so." Turner also testified that he believed that a "woman beater" needs "to be somewhere else, separated from society." The crux of this testimony from Turner was that although he denied having abused both Amy and Susan, if the jury believed otherwise, he should be separated from society—a punishment that does not fit with the grant of community supervision.

Moreover, Turner freely admitted to his three DWI convictions, and the State only briefly mentioned those convictions in closing argument,[8] choosing instead to focus on Turner's denial of having abused Amy and, thus, refusing to take responsibility for his actions. Finally, the court's charge explained to the jury that Turner had filed a sworn motion for community supervision and

---

[8]The State told the jury, "[Y]ou learned about his three DWI convictions."

provided the jury with instructions outlining the circumstance under which Turner would be entitled to community supervision. Clearly, the jury did not believe he was entitled to this requested relief. Turner's own testimony did nothing to advance his cause in this regard, and no doubt influenced the jury's decision. At worst, this factor is neutral and (at best) it weighs in favor of a finding of no prejudice.

On balance, these factors weigh in favor of a finding of no prejudice. We, therefore, cannot say there is a reasonable probability that the assessment of punishment would have been less severe in the absence of defense counsel's arguably deficient performance. *See Wiggins*, 539 U.S. at 534. Accordingly, we overrule this point of error.

## B. Failure to Voir Dire on Punishment

Turner's final claim of ineffective assistance of counsel rests on his assertion that defense counsel failed to voir dire the jury on punishment. Prior to jury selection, Turner elected to have the trial court determine punishment. The jury panel was instructed that it was only to determine the defendant's guilt. Because Turner elected to have the trial court determine punishment, if any, there was no reason for defense counsel to voir dire on punishment. However, after the jury was selected, and prior to opening statements, Turner filed a motion to have the jury assess punishment, if any. The State did not object to the motion—even though it, too, did not voir dire the jury on punishment—and the trial court granted the motion.

"We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance and that it was motivated by sound trial strategy." *Johnson v. State*, 432 S.W.3d 552, 555 (Tex. App.—Texarkana 2014, pet. ref'd) (citing *Jackson v. State*, 877

16

S.W.2d 768, 771 (Tex. Crim. App. 1994)). "If counsel's reasons for his conduct do not appear in the record and there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88–89 (Tex. Crim. App. 2002).

Here, defense counsel's trial strategy is clear—because Turner elected to have the trial court assess punishment, if any, prior to voir dire, there was no need to voir dire the jury on punishment. This decision falls within the wide spectrum of legitimate trial strategy. Turner does not complain that the decision to change this strategy, i.e., to have the jury assess punishment in lieu of the trial court, amounts to ineffective assistance of counsel. We overrule this point of error.

## IV.     Turner Received Sufficient Notice of Intent to Seek Deadly-Weapon Finding

The judgment of conviction for burglary of a habitation with intent to commit aggravated assault includes a non-firearm-deadly-weapon finding. In his final point of error, Turner complains that he was not given notice of the State's intention to seek a deadly-weapon finding in the indictment for burglary of a habitation.

"When the State seeks a deadly-weapon finding against a defendant, it must provide notice of that fact to the defendant before trial." *Vickers v. State*, 467 S.W.3d 90, 94 (Tex. App.—Texarkana 2015, pet. ref'd) (citing *Ex parte Beck*, 769 S.W.2d 525, 527 (Tex. Crim. App. 1989)). Here, Turner complains that because the indictment failed to specifically plead the use or exhibition of a deadly weapon and the State did not file a separate pleading giving notice of its intent to seek a deadly-weapon finding, he did not receive notice. "However, under certain

17

circumstances, a defendant may receive adequate notice of a deadly-weapon issue based simply on the offense charged." *Id.* (citing *Blount v. State*, 257 S.W.3d 712 (Tex. 2008)).

The indictment in this case charged that Turner, "with intent to commit the felony offense, Aggravated Assault, enter[ed] a habitation, without the effective consent of Amy Turner." The indictment also charged that Turner committed burglary of a habitation and attempted to commit, or committed, the felony offense of aggravated assault. In *Blount*, Blount was charged with burglary of a habitation with the commission or attempted commission of aggravated assault. *Blount v. State*, 257 S.W.3d 712, 713 (Tex. 2008). The Court of Criminal Appeals noted that aggravated assault can be committed only by causing serious bodily injury or by the use or exhibition of a deadly weapon during the commission of the assault. *Id*. at 714. In either circumstance, "an allegation that a defendant committed aggravated assault gives him notice that the deadly nature of the weapon alleged in the indictment [will] be an issue at trial and that the State may seek an affirmative finding on the use of the weapon." *Id*.

We find that the reasoning of *Blount* applies here. The indictment clearly alleged burglary of a habitation with the attempted commission, or the commission, of aggravated assault. Although Turner was ultimately convicted of burglary of a habitation with intent to commit aggravated assault, he was nevertheless on notice that based on the offenses charged, the State might seek an affirmative finding on the use of a deadly weapon. "Accused persons are only entitled to notice in *some form*, that the use of a deadly weapon will be a fact issue at the time of trial." *Grettenberg v. State*, 790 S.W.2d 613, 614 (Tex. Crim. App. 1990) (election by State to pursue one count of indictment over other does not vitiate notice given in indictment's original

18

form); *see also Vickers*, 467 S.W.3d at 96 (defendant on notice of State's intent to seek deadly-weapon finding when he pled guilty to burglary of a habitation with intent to commit aggravated assault).

We hold that Turner was on notice that the State would seek a deadly-weapon finding in this case by virtue of the offenses with which he was charged. We overrule this point of error.

## V. Modification of Judgment

Although Turner was convicted of burglary of a habitation with intent to commit aggravated assault, the judgment of conviction states that the offense of which Turner was convicted was burglary of a habitation with intent to commit assault.

We have the authority to modify the judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see* TEX. R. APP. P. 43.2(b). Therefore, we modify the trial court's judgment to reflect that Turner was convicted of burglary of a habitation with intent to commit aggravated assault.

## VI. Conclusion

As modified, we affirm the trial court's judgment.

Bailey C. Moseley
Justice

Date Submitted:     August 25, 2016
Date Decided:       December 2, 2016

Publish