

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00092-CR

MATTHEW JAMES AUBIN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 123rd District Court
Panola County, Texas
Trial Court No. 2016-C-0109

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

# MEMORANDUM OPINION

A Panola County jury convicted Matthew James Aubin of sexual assault of a child, Alice.[1] Following a bench trial on punishment, Aubin was sentenced to twenty years' imprisonment. On appeal, Aubin argues that the trial court erred in overruling his motion for new trial based on counsel's alleged failure to adequately investigate the facts of the case or to present mitigating evidence. Aubin also raises new grounds on appeal related to trial counsel's alleged ineffectiveness that were not considered by the trial court. He argues that counsel rendered ineffective assistance by introducing unfavorable extraneous-offense evidence, alluding to Aubin's Fifth Amendment right to remain silent, and permitting improper victim-allocution evidence at punishment.

We conclude that the trial court did not abuse its discretion in overruling Aubin's motion for new trial. We also conclude that the silent record does not support Aubin's new claims of ineffective assistance of counsel and that Aubin cannot show prejudice resulting from any alleged ineffectiveness. We, therefore, affirm the trial court's judgment.

## I.       General Standards for Ineffective Assistance of Counsel

All of Aubin's complaints on appeal are rooted in claims of ineffective assistance of counsel. "The applicant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence." *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). The right to counsel does not mean the right to errorless counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim.

---

[1]We use a pseudonym to protect the identity of the child. *See* TEX. R. APP. P. 9.10.

App. 2006). Thus, to prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). *See also Ex parte Imoudu*, 284 S.W.3d 866, 869 (Tex. Crim. App. 2009). The first prong requires a showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. This requirement can be difficult to meet since there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "If this Court 'can conceive potential reasonable trial strategies that counsel could have been pursuing,' then we cannot conclude that counsel's performance was deficient." *Turner v. State*, 528 S.W.3d 569, 577 (Tex. App.—Texarkana 2016, no pet.) (quoting *Andrews v. State*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005)).

The second *Strickland* prong, sometimes called "the prejudice prong," requires a showing that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id*. Thus, to establish prejudice,

> an applicant must show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result was reliable." [*Strickland*, 466 U.S.] at 687 . . . . It is not sufficient for Applicant to show "that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693 . . . . Rather, [he] must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695 . . . .

*Martinez*, 330 S.W.3d at 901.

A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). "Thus, we need not examine

both *Strickland* prongs if one cannot be met." *Turner*, 528 S.W.3d at 577 (citing *Strickland*, 466 U.S. at 697).

The *Strickland* test "of necessity requires a case-by-case examination of the evidence." *Williams v. Taylor*, 529 U.S. 362, 382 (2000) (quoting *Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring in judgment)). We "must look to the totality of the representation, and its decision must be based on the facts of the particular case, viewed at the time of counsel's conduct so as to eliminate hindsight bias." *Martinez*, 330 S.W.3d at 901 (citing *Strickland*, 466 U.S. at 690). In all cases, the "ultimate focus of inquiry must be on the fundamental fairness of the proceeding." *Id.* (quoting *Strickland*, 466 U.S. at 696).

## II.      Overruling Aubin's Motion for New Trial Was Not an Abuse of Discretion

Aubin argues that trial counsel failed to (1) conduct an adequate investigation of the case in preparation for trial and (2) present mitigating evidence during punishment. Both grounds for ineffective assistance were urged in his motion for new trial below.

### A.      Standard of Review on Aubin's Motion for New Trial

Our standard of review is slightly altered on these claims because a reviewing court measures a trial court's ruling on a motion for new trial under an abuse of discretion standard. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012), *overruled on other grounds by Miller v. State*, 548 S.W.3d 497 (Tex. Crim. App. 2018). A trial court abuses its discretion in this context only when no reasonable view of the record could support its ruling, which will be upheld on appeal so long as it falls within the zone of reasonable disagreement. *Id*. For that reason, "[w]hen the trial court denies a motion for a new trial alleging ineffective assistance of counsel, 'we view

4

the relevant legal standards through the prism of abuse of discretion.'" *Lampkin v. State*, 470 S.W.3d 876, 903 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.)). We must therefore decide whether the trial court erred in determining that Aubin failed to meet the two-prong *Strickland* test.

### B. Evidence Taken at the Motion for New Trial Hearing

At the hearing on Aubin's motion for new trial, counsel testified that he reviewed every piece of discovery with Aubin during numerous telephone calls and four face-to-face meetings, including the last meeting that occurred one week before trial. On Aubin's recommendation, counsel identified Aubin's girlfriend, Desiree Nitzschke, as a potential witness and spoke with her twice before trial. According to counsel, Nitzschke relayed the favorable version of events, but flipped course at trial. Counsel admitted that he was surprised by Nitzschke's testimony, which was even different from her recorded police interview.

As for other witnesses, counsel claimed that Aubin pointed him to Cory Mims, a local police officer who "never had . . . any correct knowledge of this particular crime," and several "drug addicts and prostitutes that could vouch for his character." Counsel testified that he could not locate Alice's mother, who was also a known drug addict, and could not recall from his memory whether he had spoken with the child's grandmother. Ultimately, counsel explained that the State had already subpoenaed the witnesses he believed would be required at trial. Counsel admitted that he did not seek Alice's school records and knew nothing about an open Child Protective Services case involving Alice in Texas.

The trial court scheduled the sentencing hearing two months after the jury rendered its verdict of guilt to allow for the return of a presentence investigation report (PSI).[2] In the interim, Aubin filed a letter with the trial court thanking it for the new lawyer appointed to his case, who had already met with him. Because of that letter, counsel stated he was under the mistaken assumption that he was no longer Aubin's counsel on punishment and failed to communicate with him prior to the sentencing hearing. That said, although he had stopped working on the case, counsel clarified that he had prepared for the sentencing hearing.

During his investigation into possible mitigating evidence on punishment, counsel testified that, although Aubin was competent to stand trial, he had a history of mental-health treatment and "explosive disorder." Although he did not obtain all of Aubin's mental health records, a 2014 psychiatric evaluation conducted by Community Healthcore was entered into evidence during punishment. After describing Aubin's mental health history, the report relayed that Aubin suffered from post-traumatic stress and mood disorders, had contemplated suicide, and sought assistance for chronic anger, anxiety, and mood problems.[3] The report also detailed Aubin's tumultuous childhood resulting from detailed accounts of abuse suffered by Aubin at the hands of his foster parents. According to the report, Aubin's foster parents had him "placed in institutions" beginning at age thirteen, where he was also abused, and eventually relinquished him "to the state" until he was "released to the streets" at adulthood. Aubin began experimenting with drugs and was arrested and incarcerated on several drug-related charges. Counsel also admitted a 2013 psychological

---

[2]The PSI detailed Aubin's sizeable arrest record and criminal history.

[3]Aubin's psychiatric records showed that he was prescribed mood-stabilizing medications in the past. Counsel testified that he was unaware of whether Aubin was taking those medications during the time of the assault.

6

evaluation containing much of the information in the 2014 report and had Aubin testify at length about those mitigating factors. Although counsel admitted that he did not seek help from an expert or investigator, he testified that he could not fathom what mitigating evidence was omitted during punishment.

**C.      The Trial Court's *Strickland* Findings Were Not an Abuse of Discretion**

After reviewing the transcript of the motion for new trial hearing, we can find no abuse of discretion in the trial court's conclusion that the record failed to show that trial counsel put forth an insufficient investigative effort or that he lacked a thorough understanding of the available guilt/innocence and mitigating evidence. *See Humphrey v. State*, 501 S.W.3d 656, 664 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

In support of his argument that counsel failed to adequately investigate the case, Aubin argues that counsel "billed Panola County for more than 17 hours of client meetings and more than 40 hours of trial preparation," but his "testimony and trial performance indicate that there is no way he spent more than 50 hours preparing for trial." We reject this conclusory argument.[4] Counsel's efforts in preparing for this case, which were unrefuted, were detailed at the hearing on Aubin's motion for new trial. From counsel's testimony, the trial court could have reasonably concluded that counsel's preparation of the case did not fall below an objective standard of reasonableness.

---

[4]Aubin claims that counsel failed to adequately communicate with a witness, but does not identify the witness. Assuming Aubin refers to Nitzschke, counsel's testimony demonstrated that he had spoken with Nitzschke twice, but that she reneged her favorable story at trial. We cannot say that the trial court's decision that counsel adequately prepared for Nitzschke's testimony constituted an abuse of discretion.

Aubin also argues that counsel failed to communicate with him after the jury's verdict and failed to present "any competent mitigating evidence" at sentencing. Although the record shows that counsel did not speak with Aubin before the sentencing hearing, counsel testified that he had completed his preparation for the hearing. Counsel presented mitigating evidence through his client, which was corroborated by the mitigating evidence admitted in Aubin's psychological evaluations. Simply put, the trial court was free to find that Aubin did not meet the first *Strickland* prong because ample mitigating evidence was presented.

The trial court could have also concluded that Aubin did not meet the second *Strickland* prong. Absent from both the hearing and Aubin's appellate brief is any discussion about what evidence would have been uncovered by further investigation. "Without a showing of what an investigation would have revealed that reasonably could have changed the result of the case, a claim fails for ineffective assistance based on trial counsel's general failure to investigate the facts of the case." *Straight v. State*, 515 S.W.3d 553, 568 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). "Likewise, a claim for ineffective assistance based on trial counsel's failure to interview a witness cannot succeed without a showing of what the interview would have revealed that reasonably could have changed the result of the case." *Id.*; *see Cantu v. State*, 993 S.W.2d 712, 719 (Tex. App.—San Antonio 1999, pet. ref'd) (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)).

Aubin also offered no additional mitigating evidence at the hearing, but instead questioned the fact that counsel did not seek appointment of an expert witness to uncover mitigating evidence. To establish ineffective assistance of counsel for failing to hire an expert witness, Aubin needed

8

to show that he would have benefitted from such a witness' testimony. *Ex parte Flores*, 387 S.W.3d 626, 638 n.54 (Tex. Crim. App. 2012). Aubin has not shown that an expert witness would have presented mitigating evidence not already introduced at punishment.

We overrule Aubin's first point of error because we find no abuse of discretion in the trial court's decision to overrule his motion for new trial.

## III. The Record Does Not Support Aubin's New Grounds of Ineffective Assistance

In his remaining points of error, Aubin raises grounds of ineffective assistance that were not raised before the trial court. For that reason, counsel was not questioned about these grounds at the hearing on Aubin's motion for new trial. The Texas Court of Criminal Appeals has said, "Trial counsel 'should ordinarily be afforded an opportunity to explain his actions' before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). As a result, allegations of ineffectiveness "must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999)). "[T]he presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney's reasons for his conduct." *Martinez*, 330 S.W.3d at 901 (quoting *Busby v. State*, 990 S.W.2d 263, 269 (Tex. Crim. App. 1999)). Thus, where an appellate record is silent on why trial counsel failed to take certain actions, the appellant has "failed to rebut the presumption that trial counsel's decision was in some way—be it conceivable or not— reasonable." *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *see Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

**A.      Extraneous-Offence Evidence**

Aubin argues that counsel rendered ineffective assistance when he failed to object to evidence of Aubin's extraneous sexual acts with Alice and elicited unfavorable testimony during his cross-examinations of Alice and Nitzschke.

**1.      Evidence of Aubin's Extraneous Sexual Acts**

The State's indictment alleged that Aubin intentionally or knowingly caused Alice's sexual organ to contact his mouth.  The State's first witness was a Children's Advocacy Center interviewer who had summarized, in writing, Alice's allegation as "Victim's Father Supposedly Penetrated Her Anus With His Penis."  Alice was the State's second witness.

Alice testified that she lived in Philadelphia with her grandmother, but moved to Texas in 2013 to live with Aubin, Nitzschke, and her half-brother.  Alice said she was happy with the living arrangement until 2014, when Aubin began touching her breasts and vagina.  Alice testified that the indecent touching occurred many times and progressed to other sexual acts.  The child told the jury that Aubin had forced her to fellate him several times and had also taken the child's sexual organ in his mouth.  Alice said she credited Aubin's statements that no one would believe any outcry made by her.

Alice testified that, on or about the date alleged in the indictment, she left for a motel with Aubin after he had fought with Nitzschke.  Alice described how Aubin pulled down her pants and "lick[ed]" her vagina.  To establish proof of the abuse, Alice managed to take a photo of the incident on her cell phone while Aubin was engaged in the act and texted it to her half-brother,

10

who promptly informed Nitzschke. The photographic evidence of Aubin's sexual assault of Alice was published to the jury.

The record is silent as to counsel's reasoning for failing to object to evidence of Aubin's extraneous sexual acts with Alice. By statute, when a defendant is tried for a sexual offense committed against a child under seventeen years of age, the State may, despite Rules 404 and 405 of the Texas Rules of Evidence, introduce

> evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense . . . for its bearing on relevant matters, including:
>
> > (1)     the state of mind of the defendant and the child; and
> >
> > (2)     the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b) (West 2018). And in cases much like this one, Texas courts have ruled that such evidence also passes the Rule 403 balancing test. *See Harty v. State*, 552 S.W.3d 928, 935 (Tex. App.—Texarkana 2018, no pet.); *Caston v. State*, 549 S.W.3d 601, 613 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Belcher v. State*, 474 S.W.3d 840, 848 (Tex. App.—Tyler 2015, no pet.).

As for evidence of other crimes, wrongs, or acts committed by Aubin against Alice, we find that Aubin cannot meet the first *Strickland* prong since counsel could have decided to forgo an objection based on a reasonable belief that this evidence was admissible.[5] We overrule this point of error.

---

[5]"The failure to object to admissible evidence is not ineffective assistance." *Burruss v. State*, 20 S.W.3d 179, 188 (Tex. App.—Texarkana 2000, pet. ref'd).

## 2.    Testimony Elicited During Cross-Examination

During Alice's cross-examination, counsel elicited the lurid details of Aubin's anal sexual assault of Alice and Aubin's promise to her that she could visit with her friend if she remained silent about the incident. From Nitzschke, counsel established that Aubin had genital herpes. Counsel also engaged in the following discussion with Nitzschke on cross-examination:

> Q.    Now, there comes a time when you find out that [Alice] has shown her breasts to your son, correct?
>
> A.    That's not what I recall. Well, maybe she did. Inappropriate behavior happened.
>
> Q.    Okay. And did he try to -- did she try to seduce him?
>
> A.    That was somewhat of the story.
>
> . . . .
>
> Q.    Okay. Tell me how you felt whenever you found out that this had occurred?
>
> A.    Well, this was one of the times [Alice] came to me and asked me if I would believe her if she said that her dad was doing stuff to her. . . .
>
> And [Aubin] immediately jumped in and said, "I have a video of the two of them." I said, "You have a video?" And [Alice] came back with, "That's why I won't say anything to you, because he told me if I said anything to you, he would show you a video."
>
> And so it turns out that he supposedly had set his game camera up in my son's room. And [Alice] said that he offered her $100 to go into his room and give him a blow job, and so she had gone into his room with the video camera set up.
>
> And [Alice's brother] said that she just came in . . . and that she put a condom on him. And then [Aubin] had the video, and he came in and took the video out of -- took the game camera and said not to tell me anything.
>
> Q.    So your son sat there and let her put a condom on him?

12

A.      Apparently.

Q.      And where is this video?

A.      [Aubin] said he destroyed it.

Aubin's trial strategy involved attacking Alice's credibility and establishing that the child had been engaging in sexualized acts with others from a young age.  After eliciting testimony that Aubin had genital herpes, counsel attacked the veracity of Alice's testimony by stressing the lack of any evidence showing Alice had contracted genital herpes during her alleged frequent sexual encounters with Aubin.  Counsel also tried to cast doubt on whether Alice's allegations occurred.  As an example, the State first offered evidence that Aubin tried to anally rape Alice.  In response, counsel pointed out that Alice told her friend, Haley, and Haley's mother about the encounter the same day, but Haley's mother decided not to report it, so as not to "hurt" anyone.

This Court has held that it will not second guess the strategy of trial counsel through hindsight.  *See Harner v. State*, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.).  That another attorney might have pursued a different course will not support a finding of ineffectiveness.  *Id.* (citing *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979)).  Because we find counsel's trial strategy reasonable, we cannot conclude that his performance was deficient.  *See Turner*, 528 S.W.3d at 577.

We also note that Nitzschke's long narrative about Aubin's alleged recording of Alice's sexual encounter with her half-brother was a non-responsive answer to counsel's questions.  Counsel could have decided not to the object to the narrative as non-responsive to prevent the jury from perceiving the objection as an attempt to hide something.  In any event, even if we assume

13

on this record that elicitation of this information and the lurid details of Alice's anal rape constituted ineffective assistance, we find that Aubin cannot meet the second *Strickland* prong.

The testimony of a child victim alone is enough to support a conviction for sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2018); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). Here, together with Alice's testimony establishing all elements of the offense, the jury was presented with photographic memorialization of Aubin engaged in the crime. Given the proof presented during guilt/innocence, we cannot conclude that there was a reasonable probability that the jury would have found Aubin innocent absent counsel's alleged ineffective assistance. *See Strickland*, 466 U.S. at 694. This point of error is overruled.

### B.    Counsel's References to the Fifth Amendment

Next, Aubin argues that counsel impermissibly elicited evidence related to his Fifth Amendment right against compulsory self-incrimination. Carl Harris, a detective with the Carthage Police Department, testified on direct examination that Aubin did not present himself for questioning immediately and was not initially forthcoming during his police interview.[6] During cross-examination, Aubin addressed this issue in the following colloquy:

> Q.    Reading your reports and listening to your testimony, you and Detective Poindexter made a big deal out of the fact he didn't come in right away, correct?
>
> A.    Okay.

---

[6]Aubin does not complain about any alleged ineffectiveness resulting from a failure to object to Harris' direct testimony.

Q.      Okay. And you, and apparently someone else before you, pursued him to try to get him to come in, correct?

A.      I don't know if somebody before us tried to get him to come in or not.

. . . .

Q.      Is it -- in your mind, do you -- do you believe that people have a right not to come in?

A.      Sure.

Q.      Okay. So we've got a Fifth Amendment right.

A.      Sure.

Q.      And have you ever used the phrase, "If you don't have anything to hide, why not come in?"

A.      Sure.

Q.      Okay. Kind of baiting them, getting them to come in?

A.      If that's what you would like to call it, yes.

Q.      Okay, okay. So you would agree with me that the Fifth Amendment is an important right?

A.      Sure.

Aubin argues that counsel rendered ineffective assistance by referring to his Fifth Amendment rights. The State argues that counsel's questioning of Harris was a response to the State's direct examination establishing that Aubin did not immediately respond to requests for a police interview. Because the record does not contain counsel's reasoning for such questioning, we agree with the State and find this line of questioning reasonable given Harris' direct testimony. In addition to the failure to establish the first *Strickland* prong, we also find the second prong

15

unmet given Alice's account of the crime and the photographic evidence of Aubin committing it. We overrule this point of error.

### C. Victim-Impact Evidence at Punishment

The *Strickland* two-pronged standard for assessing the constitutional effectiveness of trial counsel applies to the punishment phase of a non-capital trial. *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999). During punishment, Alice testified about the impact Aubin's actions had on her life. Citing that evidence and Article 42.03 of the Texas Code of Criminal Procedure, Aubin argues that counsel rendered ineffective assistance in failing to object to improper victim allocution evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(b) (West 2018).[7]

Article 42.03 pertains to post-sentence victim-impact statements and does not prohibit the admissibility and consideration of relevant victim-impact evidence during the punishment phase of trial before sentencing. *Jagaroo v. State*, 180 S.W.3d 793, 798–99 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Brown v. State*, 875 S.W.2d 38, 40 (Tex. App.—Austin 1994, no pet.)

---

[7]In relevant part, the statute reads:

> The court shall permit a victim . . . to appear in person to present to the court and to the defendant a statement of the person's views about the offense, the defendant, and the effect of the offense on the victim. . . . The court reporter may not transcribe the statement. The statement must be made:
>
> > (1) after punishment has been assessed and the court has determined whether or not to grant community supervision in the case;
> >
> > (2) after the court has announced the terms and conditions of the sentence; and
> >
> > (3) after sentence is pronounced.

TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(b).

16

(per curiam). The record shows that the State did not introduce Alice's testimony under Article 42.03.

Instead, the victim-impact evidence was admitted under Article 37.07, which governs "[t]he procedures to be followed at the punishment stage of trial and the evidence that may be considered in determining punishment." *Brown*, 875 S.W.3d at 39; *see* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2018) (the State may present evidence "as to any matter that the court deems relevant to sentencing" in non-capital felony cases). Victim-impact testimony is relevant to sentencing if it has "some bearing on the defendant's 'personal responsibility and moral guilt,'" *Stavinoha v. State*, 808 S.W.2d 76, 79 (Tex. Crim. App. 1991) (per curiam) (quoting *Miller-El v. State*, 782 S.W.2d 892, 896 (Tex. Crim. App. 1990)), including "the physical, psychological, or economic effects of a crime on the victim or the victim's family," *Espinosa v. State*, 194 S.W.3d 703, 711 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Moreno v. State*, 38 S.W.3d 774, 778 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (plurality op.) (victim-impact evidence relevant if defendant should have anticipated particular effect on victim or victim's family).

As the United States Supreme Court has observed, evidence of the impact of an offense on the life of the complainant and others may be introduced at the punishment phase of a trial as a way of informing "the sentencing authority about the specific harm caused by the crime in question." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (noting "victim impact evidence serves entirely legitimate purposes"); *see Salazar v. State*, 90 S.W.3d 330, 335 (Tex. Crim. App. 2002)

(explaining victim-impact evidence "is designed to remind the jury that [a crime] has foreseeable consequences to the community").

Because the State did not introduce Alice's punishment testimony as Article 42.03 victim-allocution evidence, we reject Aubin's complaint that counsel failed to object under Article 42.03. Instead, based on this record, which does not contain counsel's reasoning on this subject, we conclude it reasonable for counsel to have determined the testimony was admissible under Article 37.07. Therefore, the first *Strickland* prong is not met.

Also, with respect to the prejudice prong, an appellant must show a reasonable probability that, but for trial counsel's deficiency at the punishment phase, the punishment fact-finder would have reached a more favorable verdict. *Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012) (orig. proceeding). It is not enough to satisfy this standard if the likelihood that the punishment fact-finder would have reached a more favorable verdict is merely "conceivable," based upon conjecture or speculation. *Ex parte Cash*, 178 S.W.3d 816, 818–19 (Tex. Crim. App. 2005) (orig. proceeding) (citing *Strickland*, 466 U.S. at 693). Here, Aubin makes no argument that the trial court would have assessed a lesser sentence absent this evidence. In any event, such a conclusion would be mere conjecture in light of Aubin's criminal history and Alice's testimony during guilt/innocence. Therefore, the second *Strickland* prong is also not met.

We overrule Aubin's last point of error.

## IV.     Conclusion

We affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:     February 20, 2019
Date Decided:       March 15, 2019

Do Not Publish